IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JOHN A. ROSS, JR.                                                                  PETITIONER

V.                                                                 CAUSE NO.: 4:14CV087-SA-JMV

CHRISTOPHER B. EPPS, ET AL.                                          RESPONDENTS

MEMORANDUM OPINION

Respondents filed a Motion to Dismiss [8] in February, which the Magistrate Judge has recently issued a Report and Recommendation [23] to grant that motion. Petitioner filed an Objection [24], and Respondents thereafter responded [26]. After considering the motion, responses, the Magistrate Judge's recommendation, and the objection and response thereto, the Court finds that the Report and Recommendations should be ADOPTED and APPROVED as the order of this Court, that Petitioner's Objections are unfounded, and the Motion to Dismiss should be GRANTED.

*Factual and Procedural Background*

John Ross was convicted of murder in the Circuit Court of Sunflower County, Mississippi. He was sentenced on May 10, 2002, to life in the custody of the Mississippi Department of Corrections. Ross appealed his conviction and sentence to the Mississippi Supreme Court. The Mississippi Court of Appeals affirmed the conviction and sentence in 2004. *Ross v. State*, 883 So. 2d 1181 (Miss. Ct. App. 2004), *reh'g denied* (Aug. 3, 2004), *cert. denied* (Oct. 14, 2004). After the Mississippi Supreme Court denied Ross's Motion for Post-Conviction Collateral Relief, he filed a Petition for Writ of Habeas Corpus in the federal court. *Ross v. State*, No. 4:05cv121-WAP (May 18, 2005). The district court denied all seven of Ross's claims, finding them to be without merit. *Ross*, No. 4:05cv121-WAP [32] (Sept. 25, 2008).

Thereafter, Ross moved for authorization to file a successive 28 U.S.C. § 2254 application with the Fifth Circuit. *In re: John A. Ross, Jr.*, No. 13-60909 (Mar. 13, 2014). In a per curiam opinion, the panel of three Fifth Circuit judges granted his request to file a second § 2254 application.

Ross then filed the instant Petition for Writ of Habeas Corpus in this Court. *Ross v. Epps*, No. 4:14cv087-SA-JMV [1] (June 19, 2014). The Respondents filed a Motion to Dismiss on the grounds that Ross could not satisfy the initial requirements of § 2244(b) prior to considering the merits of the claims. After extensive briefing and a hearing, the Magistrate Judge entered a Report and Recommendations [23] suggesting that the Motion to Dismiss be granted as Petitioner failed to meet his burden. Ross filed an Objection within the proscribed period of time [24], and Respondents filed a Response [26]. The matter is now ripe for review.

*Discussion and Analysis*

a. *Standard of Review*

Because Petitioner filed written Objections [24] to the Magistrate Judge's Report and Recommendations [23], the Court applies a *de novo* standard of review. 28 U.S.C. § 636(b)(1); *see* Rule 8(b) of Rules Governing Section 2254 Cases In The United States District Courts.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications. If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases." *Tyler v. Cain*, 533 U.S. 656, 661, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001). Under the AEDPA, the decision to allow a successive application must be made by a court of appeals. *In re Smith*, 142 F.3d 832, 833-34 (5th Cir. 1998). As specified in § 2244(b)(3)(C), the Fifth Circuit may grant authorization only if

"the application makes a prima facie showing that the applicant satisfies the requirements" of § 2244(b).

In this case, Ross secured the requisite authorization before filing this successive action by presenting his Petition and exhibits in support to the Fifth Circuit. That Court found that he had prima facie shown that [1] the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and [2] the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2244(b)(2)(B).

After such showing, the district court must then engage in a "fuller exploration by the district court." *In re Morris*, 328 F.3d at 740 (quotation omitted). Pursuant to Section 2244, the Court is limited to analysis of the factual predicates underlying each successive petition claim put forth by the Petitioner.

b. *The Magistrate Judge's Report and Recommendations*

The Magistrate Judge initially noted that under the un-discoverability requirement of § 2244(b)(2)(B)(i), any factual predicate that could have been, with due diligence, discovered by Ross prior to March 2005 (the date his prior habeas petition was filed), or October 2005 (the last date the prior habeas petition was amended), could not serve as a foundation for the successive petition. Because the Magistrate Judge researched and found that the satisfaction of § 2244(b)(2)(B)(i) is a jurisdictional prerequisite to considering the merits of a successive petition's constitutional claims, the Petitioner had to satisfy the due diligence obligations pursuant to that statute instead of collapsing it into a merits review of his *Brady* claims. The Magistrate Judge additionally held that the allegedly newly discovered factual predicates must be

"tethered or linked to the asserted constitutional claims" and must bear upon the constitutionality of the Petitioner's detention, not guilt.

The Magistrate Judge then painstakingly analyzed each of the twelve asserted factual predicates presented by the Petitioner in 3000 pages of documentation submitted, and sixty-eight exhibits.

Factual Predicate 1: The alleged unethical business relationship between Hayne and the State

After reviewing the Letter from the Mississippi Department of Public Safety and the Advisory Opinion from the Mississippi Ethics Commission, both dated in July of 1992, the Magistrate Judge found that the evidence did not reveal anything nefarious concerning the relationship between Hayne and the State. In fact, the proposed business relationship which the Mississippi Ethics Commission objected to was never consummated. Furthermore, the Magistrate Judge noted that it was uncontested that the details of Hayne's actual relationship with the State were well-known both at the time of Ross's trial and available to him prior to filing his first habeas petition.

In discussing the newspaper articles from 1998, 1999, 2006, and 2008, the Magistrate Judge found that articles would not impact Ross's guilt. While the Magistrate Judge did not discuss the discoverability of the newspaper articles, the Court finds that because these articles were from the state newspaper, *Clarion Ledger*, as well as the main newspaper published in Memphis, Tennessee, *Commercial Appeal*, and all published prior to or during the pendency of Ross's initial habeas request, these articles are unavailable as the basis for the factual predicate of a second successive habeas petition.

The Magistrate Judge also considered a 2008 letter from the College of American Pathologists Inquiry Committee to the President of the College of American Pathologists, which

she commented failed to address any particulars about the alleged business relationship between Hayne and the State. Likewise, the Magistrate Judge mentioned a letter from Michael West to "fellow coroners" dated January 25, 1995, detailing complaints of the then-State Medical Examiner, which was not Hayne. The Magistrate Judge noted no impeaching or exculpatory evidence in either the letter or petition attached. Another letter from Michael West dated June 15, 2006, but addressed to the American Board of Forensic Odontology was reviewed by the Magistrate Judge but found to be devoid of any reference to Hayne's relationship with the State other than to identify him as a state-designated pathologist.

Other evidence painstakingly reviewed by the Magistrate Judge for inclusion under this factual basis includes: The Joint Legislative Committee Report "An Evaluation of Mississippi's Medicolegal Death Investigation Process" prepared in 2008; "Forensic Autopsy Performance Standards" by the National Association of Medical Examiners dated August 12, 2005; Autopsy Report of Randy Cheney dated August 30, 2007, and Randy Cheney's attendant medical records from December 15, 2003; Hayne's trial testimony in *State v. Brown*, No. 2006-KA-00717-CO (Miss. Ct. App. 2007), *State v. Bennett*, No. 2003-DP-00765-SCT (Miss. 2006), and a deposition of Hayne in Cause No. 63:09cv218-KS-LRA, dated April 26, 2012; an Affidavit from W. Tucker Carrington, Director of the Mississippi Innocence Project, dated September 27, 2012; the deposition of Cecil McCrory in Cause No. 3:09cv218-KS-LRA (S.D. Miss.), dated April 24, 2012; and a calendar dated April 26, 2012, that reflects the number of autopsies performed by Hayne in 2007-2008.

The Magistrate Judge found no link between all the presented evidence underlying this first factual predicate and Ross's *Brady*, *Napue*, or Confrontation Clause challenges. As much of this evidence was produced or prepared after Ross's trial, the Magistrate Judge noted that it

5

could not form the basis of a successive petition because it could not have been suppressed prior to its creation. Thus, the Magistrate Judge found that Ross could not establish that, but for the evidence's suppression, no reasonable juror could have found him guilty.

Factual Predicate 2: Hayne testified falsely at Ross's trial to being board certified in forensic pathology

The Magistrate Judge additionally reviewed a multitude of exhibits Ross claims supports his second factual predicate regarding Hayne's credentials. The Magistrate Judge noted that the information produced was not new information appropriate for a successive habeas petition and was the type of information that Ross, "with his own expert in forensic pathology – could have learned with due diligence before his trial in 2002 or before he filed or amended his initial habeas petition in 2005." Report and Recommendation [23], p. 28 (July 30, 2015). Accordingly, the Magistrate Judge found that the "asserted distinctions of one certifying board over another do not amount to clear and convincing proof, when viewed against the whole of the proof, that but for a constitutional violation arising from non-disclosure of the subject information, no reasonable juror could have found Ross guilty." *Id*. at 30.

Factual Predicate 3: Prior to Ross's trial, Hayne testified falsely about the circumstances surrounding the fact that he failed the American Board of Pathology (ABP) certification exam in 1989

Despite Ross's production of Hayne's testimony from several other cases and a *Clarion Ledger* article highlighting same, the fact of the matter is that testimony regarding Hayne's taking the American Board of Pathology certification exam was never addressed at Ross's trial. Therefore, the Magistrate Judge found that it was not tethered to Ross's alleged *Brady*, *Napue*, or Confrontation Clause claims. Accordingly, the Magistrate Judge found Ross could not establish that but for such a constitutional violation occasioned by its non-disclosure, no reasonable juror could have found him guilty.

Factual Predicate 4: Hayne testified falsely at Ross's trial that he was board certified or had the equivalent of board certification in forensic medicine (as distinct from forensic pathology

Ross cited three exhibits to support this fourth factual predicate. The Magistrate Judge examined an article by Leah Bartos from ProPublica dated April 17, 2012, which was critical of the organization on which Hayne relies to support his claim that he is board certified in forensic medicine (as opposed to forensic pathology). The Magistrate Judge acknowledged that the certifying board was listed on Hayne's C.V., which Ross, his attorney, and his forensic pathology expert were provided prior to his testimony at Ross's 2002 trial.

In addition, the Magistrate Judge reviewed an Attorney General's Opinion dated May 6, 2010, which recited and included a copy of Hayne's certificate from ACFEI, and an email exchange between John Lechliter and Radley Balko dated March 26, 2008 regarding standards of certification for pathology in the ACFEI organization. Both these documents were insufficient to show clear and convincing evidence that Ross's guilty verdict would have been affected by this information.

Factual Predicate 5: Hayne testified falsely prior to Ross's trial that he had undertaken certain professional and scholarly activities

Ross produced the C.V.s of both Hayne and Dr. Michael West to show that both physicians claim credit for many of the same publications. The Magistrate Judge noted that an actual review of the publications would have revealed that information prior to Ross's trial. Moreover, the Magistrate Judge focused on an affidavit West gave in 2001, put forth by Ross, in which West acknowledges that even though he appears as the only author/presenter on the various publications and presentations, Hayne could properly take credit for them on his C.V. as well.

7

Factual Predicate 6: Hayne testified falsely prior to Ross's trial to certain educational accomplishments

Ross contends that a review of Hayne's undergraduate academic record shows that some testimony he gave in other trials as to his "maintaining a straight-A average" while performing a certain caseload on the side was inaccurate. The Magistrate Judge stated that all academic records were not produced, "[o]f more importance, Hayne was not questioned at Ross's trial about his undergraduate work (predating Ross's trial by 30 years)." Further, Ross simply cannot with any credibility assert that Hayne's undergraduate record was either exculpatory or suppressed by the State in Ross's trial. The Magistrate Judge further noted that if he could obtain those records in 2012, he certainly could have obtained those records prior to his original habeas petition with due diligence.

Factual Predicate 7: Hayne testified prior to Ross's trial that, based on an autopsy alone, he would only be able to speculate as to the angle between a shooter and a victim, but he unqualifiedly testified at Ross's trial to his ability to determine the precise angle of a gun relative to Deidre's head when she was shot

The Magistrate Judge held that despite the production of Hayne's testimony given in an earlier trial regarding bullet trajectory, there was no explanation as to why Ross or his counsel could not, in due diligence, have discovered this testimony. Further, the Magistrate Judge held that the testimony in the *Young v. State*, No 97-CP-00162-SCT (Miss. 1999), did not contradict Hayne's ballistic testimony in Ross's case. Accordingly, the Magistrate Judge found that disclosure of the prior testimony would not clearly and convincingly have resulted in no reasonable juror being able to find Ross guilty.

<u>Factual Predicate 8: Hayne testified prior to Ross's trial that he was only able to speculate as to a bullet's trajectory through a person's body, but nevertheless testified unqualifiedly at Ross's trial that he was able to ascertain the actual trajectory of the bullet that killed Deidre Ross</u>

Ross, citing a portion of the above-cited trial testimony, *Young v. State*, to support this factual predicate. The Magistrate Judge reviewed the actual testimony in both the *Young* case and Ross's trial regarding the bullet trajectory and the deviation resulting from contacting human tissue and bone. She held that the evidence presented "does not suggest, much less clearly establish, that but for an unconstitutional non-disclosure of [his prior testimony regarding the possibility that bullets could deviate past the first inch to inch and a half of a wound], at Ross's trial, no reasonable juror could have found Ross guilty." Moreover, the Magistrate Judge noted that had Ross exercised due diligence prior to his trial or when his initial habeas petition was filed, he could have obtained that evidence.

Ross additionally relies on excerpt from a book on gunshot wounds, published in 1999, noting that "[e]xact calculation of the angle that the bullet travelled through the body is not possible and is misleading . . . ." The Magistrate Judge noted that either the writing was the opinion of a forensic expert's view on the subject, or reflective of a widely-held belief among forensic pathologists. However, the Magistrate Judge held that the non-disclosure of that singular opinion would not support a *Brady*, *Napue*, or Confrontation Clause violation. The Magistrate Judge further held that if the opinion regarding the inability to properly calculate the angle of the bullet was indeed a widely-held belief by pathologists, such an opinion was indisputably discoverable with due diligence.

Factual Predicate 9: Hayne testified falsely at Ross's trial that, in his opinion, the gun that killed Deidre Ross was pointed at a certain angle relative to the entrance wound; that the gun that killed Deidre was a certain distance from her body when she was shot; and that the bullet traveled a certain trajectory on entering her body

The Magistrate Judge analyzed Ross's other ballistic opinions and held them to be opinions expressed by an expert, as opposed to facts. At a hearing held on the matter, the Magistrate Judge noted that Ross's attorney acknowledged such as well. Out of an abundance of caution, however, the Magistrate Judge further reviewed Hayne's C.V.; Hayne's trial testimony in *Dudley v. State*, No. 97-KA-00601-SCT (Miss. Aug. 20, 2008), *Boyd v. State*, No. 2006-KA-00562-SCT (Miss. 2008), *Jones v. State*, No. 2006-KA-00134-SCT (Miss. 2007), and *Maye v. State*, No. 2007-CT-02147-SCT (Miss. 2010); a prepublication copy of "Strengthening Forensic Science in the United States: A Path Forward"; an excerpt from "Medico-legal Investigations of Death"; and an excerpt from Malcolm J. Dodd's publication, "Terminal Ballistics: A Text and Atlas of Gunshot Wounds 37". When viewing the context of the provided evidence, the Magistrate Judge did not find that but for a constitutional violation occasioned by the non-disclosure of the texts and testimony cited, no reasonable juror could have found Ross guilty.

Factual Predicate 10: Hayne testified falsely at Ross's trial that Deidre's bruises were consistent with blunt force trauma from a hand or foot

The Magistrate Judge noted that as this factual predicate is based on the testimony elicited from Hayne at trial, it could not possibly be newly discovered.

Factual Predicate 11: Hayne testified falsely at Ross's trial that women shoot themselves in the chest more often than the head at a ratio of 4 to 5 to 1

The Magistrate Judge reviewed the trial testimony and stated that Hayne testified that in his experience, women commit suicide by gunshot to the chest four to five times more often than they do so by gunshot to the head. As Ross's own expert in pathology could have easily

discovered the actual statistical data on that subject for Ross, the Magistrate Judge held that with due diligence, that information was discoverable.

Factual Predicate 12: Hayne testified falsely at Ross's trial that he was "a state pathologist" for the Department of Public Safety Medical Examiner's Office for the State of Mississippi

The Magistrate Judge held that Hayne's testimony could not possibly advance this successive petition as it is not newly discovered.

The Evidence as a Whole

After reviewing each individual exhibit, the Magistrate Judge held that viewing the evidence as a whole, even if Hayne did not testify at Ross's trial, there was an abundance of evidence and testimony that Ross was guilty of the crime.

Accordingly, the Magistrate Judge recommended that the Court grant Defendants' Motion to Dismiss the successive petition as Ross failed to make the requisite showing that [1] the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and [2] the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2244(b)(2)(B).

   c. *Petitioner's Objections and the Court's Discussion*

Ross filed his Objections to the Report and Recommendations within the fourteen day period allowed. In particular, Ross raised four objections to the Magistrate Judge's consideration of the evidence:

   (1) Misapplication of the due diligence standard

Ross asserts that the Magistrate Judge applied an "incorrect and overwhelmingly burdensome due diligence standard." In particular, Ross contends that the Report and

Recommendations fails to take into account the particular circumstances of an objective prisoner, "including the limitations of physical confinement." The Petitioner claims that because the Magistrate Judge applied the wrong standard, all its findings about due diligence are flawed. Indeed, Ross claims that the Magistrate Judge analyzed his due diligence based on the findings of a "full time legal fellow, a criminal defense attorney, even an expert in forensic pathology."

The first requirement Petitioner must meet in order to have his second habeas petition considered is that the factual basis for the constitutional claim must not have been discoverable at the time the first federal petition was filed. 28 U.S.C. § 2244(b)(2)(B)(i). "[D]ue diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record." *Johnson v. Dretke*, 442 F.3d 901, 908 (5th Cir. 2006). The burden to make a showing of due diligence remains with the petitioner. *Id.* (citing Eleventh Circuit which "consistently required successive petitioners stating *Brady* claims to first show that the factual predicate could not have been discovered previously before ever reaching whether the prosecution failed to disclose *Brady* material.") (citing *In re Buenoano*, 137 F.3d 1445 (11th Cir. 1998); *In re Jones,* 137 F.3d 1271 (11th Cir. 1997); *In re Boshears*, 110 F.3d 1538 (11th Cir. 1997)). Moreover, in a successive petition where a *Brady* claim is urged, as is the case here, the Petitioner may not rely solely upon the ultimate merits of the *Brady* claim in order to demonstrate due diligence under §2244(b)(2)(B). *Id.* at 911(merits of *Brady* cannot be collapsed with the due diligence requirements of 2244(b)(2)(B)(i)). Regardless of possible prosecutorial misconduct, petitioner must still show that the facts underlying his *Brady* claim could not have been previously discovered through the exercise of due diligence. *Id.* at 910-11.

The Court overrules the objection. Even though it took many persons to gather the material and look through trial transcripts does not mean that with due diligence, Ross could not

12

have made similar findings. Further, the material presented for the factual predicates is not condemning or particularly hard to find. Not only did Ross have the benefit of counsel at his trial, he also had the benefit of an expert in forensic pathology. As noted by the Magistrate Judge, counselors often review prior trial transcripts in preparation for an opposing expert witness. Moreover, a retained expert is also often tasked with reviewing the opposing expert's findings or credentials. The Court finds that the Magistrate Judge applied the correct standard and those approves of her findings.

(2) <u>Items appended to Ross's petition mistakenly considered as standalone factual predicates</u>

Ross contends that the items appended to the Petition were only offered as "general evidence of Dr. Hayne's incompetence and lack of credibility . . . ." Ross further acknowledges that while the State could not suppress letters and documentation that was not produced until after Ross's trial, he claims that the information contained therein was suppressed and forms the basis of his constitutional violations.

Pursuant to Section 2244, the Court is tasked with analyzing the factual predicates underlying each successive petition claim put forth by the Petitioner. The Magistrate Judge conducted the proper inquiry and further, acknowledged that reviewing the evidence as a whole yielded the same result. This objection is overruled.

(3) <u>Dr. Hayne's knowledge should have been imputed to the State</u>

Ross next objects that the Magistrate Judge failed to consider that Hayne was a state actor for purposes of imputing to the State Dr. Hayne's own knowledge of impeachment material under *Brady* and false testimony under *Napue*.

The Magistrate Judge required separate briefing by the parties as to this specific issue. The Court defers to the findings of the Magistrate Judge in the Report and Recommendations on

this issue. Petitioner has failed to show that the factual predicates and attached evidence even if imputed to the State would make this successive petition successful.

(4) <u>Misassessment of the evidence as a whole</u>.

Last, Ross contends that the Magistrate Judge misassessed the evidence as a whole based on her final finding that Ross would have been convicted even without Dr. Hayne's testimony. Ross objects and claims that as Dr. Hayne provided the principal evidence supporting the State's theory that Deidre Ross's death was a murder instead of a suicide, without which, the evidence was inconclusive as to the cause of death.

In her analysis, the Magistrate Judge highlighted the eyewitness testimony regarding the bruises and cuts to Deidre's body, and mentioned Ross's verbal assault at a party and in their home earlier that evening. The Report and Recommendation also analyzed the position of the firearm on Deidre's body, the lack of identifiable fingerprints on the gun, and the fact that Deidre was able to grab a firearm from some unknown location and shoot herself with her non-dominant hand, all while remaining under the bedclothes without garnering her husband's attention who was, admittedly, in the same room. Finally, the Magistrate Judge concluded that there was no evidence presented that Deidre was suicidal, despite her prescription for anti-anxiety medication.

For his claims to survive, the Petitioner is required to establish "by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). The Magistrate Judge determined that Petitioner had not met this burden. A reevaluation of the evidence by this Court leads to the same conclusion.

In addition to the testimony and evidence highlighted by the Magistrate Judge which supported Ross's murder conviction, this Court specifically mentions Ross's defense pathology

14

expert's testimony that at the time death, Deidre's blood alcohol content was between .22 and .31. Therefore, while Ross apparently had his back turned in his own bedroom, Deidre, who was "good and drunk" according to Ross's expert, reached out, grabbed a gun with her non-dominant hand, and was able to pull the trigger all without rousing the attention of Ross.

The Petitioner is unable to prove by clear and convincing evidence that even without Steven Hayne's testimony, a reasonable jury could not have found him guilty. The Magistrate Judge assigned to this case conducted a thorough review of the evidence presented and did not misinterpret or "misassess" the evidence presented.

The Court finds that Petitioner has failed to carry his burden as to this successive petition.

*Conclusion*

After thoroughly reviewing the record and the findings in the Report and Recommendations [23], in addition to the positions advanced in Petitioner's Objections [24], and for the reasons stated herein, the Court finds that the Petitioner's Objections [24] should be OVERRULED, and that the Magistrate's Report and Recommendations [23] entered on July 30, 2015, should be ADOPTED as the findings of the Court.

Accordingly, the Court finds the Petitioner has failed to make the showing necessary to support a successive petition for writ of habeas corpus as directed under § 2244(b)(2)(B)(i) and (ii). Thus, Respondents' Motion to Dismiss [8] is GRANTED, the claims are DISMISSED, and this case is CLOSED.

SO ORDERED, this the 30th day of September, 2015.

                                            /s/ Sharion Aycock
                                            **U.S. DISTRICT JUDGE**